**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CLIFFORD PRESS, | |
| Plaintiff, | CIVIL ACTION NO. 3:11-CV-2265 |
| v. | (JUDGE CAPUTO) |
| UNITED AIRLINES, INC., | |
| Defendant. | |

**MEMORANDUM**

Presently before the Court is Defendant United Airlines, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff Clifford Press properly stated claims for breach of contract and defamation, and those claims are not preempted, the motion will be denied in part. But because Mr. Press failed to state claims for false imprisonment, intentional infliction of emotional distress, and civil rights violations under 42 U.S.C. § 1983, the motion will be granted in part.

**I. Background**

The facts as alleged in Mr. Press's complaint are as follows:

On March 27, 2011, Mr. Press flew from Denver to New York on United Airlines. He brought a prepackaged salad onto the flight with him, and after the flight began, he left his seat and went to the plane's rear galley to ask a flight attendant about how to dispose of the salad's packaging. The flight attendant, Sharon Brando, recognized from his voice and appearance that Mr. Press was a white South African. This identification made Ms. Brando, an African American, become aggressive and domineering toward Mr. Press. She demanded that he "show some respect" and told him to return to his seat. Mr. Press

responded that he was ready to return to his seat and wanted to know where he might find a trash receptacle. Ms. Brando refused to answer his question, demanding again that he return to his seat. Mr. Press placed the packaging on the floor between himself and Ms. Brando and returned to his seat.

Fifteen minutes later, he was approached by another flight attendant, Gina Marie Algano. Ms. Algano told Mr. Press, "Here's what you're going to do. You're going to go back to the galley, pick up your trash, and put it in the trash can." Mr. Press advised Ms. Algano that he did not want to leave his seat again because he might encounter Ms. Brando. Ms. Algano then informed Mr. Press that if he did not get up and dispose of his trash, she would ensure that he was declared a security threat and taken off the plane by police when they arrived in New York. Mr. Press remained in his seat, and Ms. Algano walked away. She returned with the salad packaging, throwing it under Mr. Press's seat.

Ms. Brando, Ms. Algano, and a third flight attendant, Nelga Luther, individually and jointly requested that the flight's captain declare a "level one security alert" based on Mr. Press's conduct. The captain initially refused, but gave in after repeated entreaties. At least one of the flight attendants asked other passengers on the flight whether they would be able to assist in case of a physical altercation with Mr. Press, describing Mr. Press as "disruptive" or a "security threat."

When the plane arrived in New York, all passengers were instructed to remain in their seats. Several Port Authority police officers boarded the plane and removed Mr. Press. The officers detained and questioned Mr. Press in the boarding area adjoining the arrival gate, in the full view of his fellow passengers now departing the plane and the general public. They released him after thirty minutes and took no further action against him.

2

On September 8, 2011, the Federal Aviation Administration filed a complaint demanding a penalty against Mr. Press for failure to remain in his seat while the "fasten seatbelt" sign was illuminated, failure to comply with instructions of crew members, and failure to comply with a Federal Aviation Administration regulation that states that "no person may assault, threaten, intimidate, or interfere with a crew member in the performance of the crew member's duty aboard an aircraft."

Mr. Press filed his complaint against United on December 7, 2011. The complaint alleges civil rights violations pursuant to 42 U.S.C. § 1983, false imprisonment, intentional infliction of emotional distress, breach of contract, and defamation. Mr. Press seeks compensatory and punitive damages.

United moved to dismiss on February 7, 2012. The motion has been fully briefed and is ripe for disposition.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The pleading standard of Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129

3

S. Ct. 1937, 1959 (2009) (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Thus, when determining the sufficiency of a complaint, a court must undertake a three-part inquiry. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The inquiry involves: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000). Under Rule 12(b)(6), a dismissal based on the statute of limitations is appropriate only where the untimeliness of the claim is clear on the face of the complaint. *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168 (3d Cir. 1978) (citations omitted).

### III. Discussion

**A. Section 1983**

United's motion to dismiss Mr. Press's claims under 42 U.S.C. § 1983 will be granted because United is not a state actor. Section 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798,

4

806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). "Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)). Because United is a private corporation, it does not act under color of state law.

Mr. Press argues that the United employees became state actors by conspiring with the Port Authority, but the complaint fails to plausibly allege a conspiracy. Private citizens act under color of law when they conspire with state officials. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). In order to prove a conspiracy existed, a plaintiff must present "enough factual matter (taken as true) to suggest that an agreement was made" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted)). Here, Mr. Press has not alleged that the flight attendants made any agreement with the Port Authority. He argues that the "genesis" of the conspiracy occurred when Ms. Algano informed Mr. Press that if he did not dispose of his trash, she would ensure that he was removed from the plane by police. Pl.'s Opp. Brief, 6 (citing Compl. ¶ 15). But this allegation does not set forth a conspiracy between United and the Port Authority–if anything, it indicates an independent plan by Ms. Algano. Mr. Press also points out that the three flight attendants "individually and jointly" asked the captain to declare a security alert. *Id.* (citing Compl. ¶ 17). But again, this fact does not show any agreement–or even any awareness–by the Port Authority. At best, this demonstrates an agreement between the flight attendants. In fact, Mr. Press even states in his brief that "the United employees conspired among themselves and, employing a

5

customary pattern, imported the Port Authority Police into their conspiracy." *Id.* at 8. But "in the absence of a conspiracy with the police to violate constitutional rights, a business's summons of a police officer to deal with a possible disturbance does not make it a state actor." *Bailey v. Harleysville Nat'l Bank & Trust*, 188 Fed App'x 66, 66 (3d Cir. 2006) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)). Thus, United did not "import" the Port Authority into their alleged conspiracy merely by calling them for assistance, and the Port Authority's standard response to the call does not constitute an agreement.

Finally, Mr. Press's reference in oral argument to *Clark v. Conahan*, 737 F. Supp. 2d 239 (M.D. Pa. 2010), is inapposite. In *Clark*, I stated that a plaintiff in a § 1983 case might establish causation with allegations of a defendant "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 261 n.4. Mr. Press now argues that United set in motion a series of acts by the Port Authority that it reasonably should have known would cause the Port Authority to inflict a constitutional injury on Mr. Press. But the "set in motion a series of acts by others" standard applies only in the context of establishing causation; it cannot be used to establish a conspiracy because it would not necessarily involve a "meeting of the minds," which is the hallmark of a conspiracy. *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010). Thus, because he failed to allege a conspiracy with a state actor, Mr. Press cannot bring a § 1983 claim against United.

## B. State Law Torts

United also moves to dismiss Mr. Press's four state law tort claims. First, it argues that the claims are preempted by federal law. Alternatively, it argues that Mr. Press has

failed to sufficiently plead the tort claims under New York law.

### 1. Preemption

United argues that Mr. Press's state tort claims are preempted by the Federal Aviation Act of 1958 ("FAA"), 49 U.S.C. § 40101, *et seq.*[1] Pursuant to the Supremacy Clause of the United States Constitution, Congress has the power to enact statutes that preempt state law. *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 509 (1989); *see also* U.S. Const. art. VI, cl. 2 ("[T] he laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). The doctrine of "field preemption" allows courts to infer a congressional intent to preempt state law "where federal regulation of a field is pervasive, or where state regulation of the field would interfere with Congressional objectives." *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367 (3d Cir. 1999) (internal citations omitted). When evaluating congressional intent to determine whether the field preemption doctrine applies, courts must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc.*

---

[1] United also suggests in a footnote that Mr. Press's claims are expressly preempted by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b). Congress passed the ADA in order to promote open competition among airlines. *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 190-91 (3d Cir. 1998). Although the issue has not been fully briefed by the parties, it does not appear that the ADA preempts Mr. Press's claims. The Supreme Court has held that breach of contract claims are not preempted by the ADA. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228-89 (1995). Further, the Third Circuit has held that the ADA does not preempt tort claims unless the common law tort remedy "frustrates deregulation by interfering with competition through public utility-style regulation." *Taj Mahal*, 164 F.3d at 194 (allowing plaintiff to proceed on defamation claim against airline). United does not suggest that Mr. Press's claims interfere with its ability to compete, and so ADA preemption would not apply here.

*v. Lohr*, 518 U.S. 470, 485 (1996)) (internal quotation marks omitted). United argues that Mr. Press's claims are preempted because the Third Circuit Court of Appeals held in *Abdullah v. American Airlines, Inc.* that "Congress, in enacting the FAA and relevant regulations, intended generally to preempt state and territorial regulation of aviation safety." *See* 181 F.3d at 367-78.

United's argument fails, however, because it misinterprets the Third Circuit precedent regarding preemption under the FAA. In *Elassaad v. Independence Air, Inc.*, 613 F.3d 119 (3d Cir. 2010), the Third Circuit clarified its holding in *Abdullah*, highlighting two issues that are relevant to the instant case. First, the *Elassaad* Court explained that while the FAA preempts "the entire field of aviation safety" from state regulation, "the 'field of aviation safety' does not include a flight crew's oversight of the disembarkation of passengers once a plane has come to a complete stop at its destination." *Id.* at 121 (citing *Abdullah*, 181 F.3d at 365). Thus, Mr. Press's claims arising out of actions taken after the plane had landed–his alleged false imprisonment and the alleged defamatory e-mail–would fall outside the preempted field of aviation safety. Second, and more importantly, the *Elassaad* Court specified that *Abdullah* "determined only that the standard of care used in adjudicating those claims was preempted," meaning that "[l]ocal law still govern[s] the other negligence elements (breach, causation, and damages), as well as the choice and availability of remedies." *Id.* at 125. The Third Circuit's distinction between the standard of care (which must be based on federal standards) and the other elements of negligence (which may be based on local law) is rooted in congressional purpose: *Abdullah* found implied field preemption "based on [its] conclusion that the FAA and relevant federal regulations establish complete and thorough safety standards for interstate and international air

8

transportation that are not subject to supplementation by, or variation among, jurisdictions," 181 F.3d at 367. Thus, if Mr. Press argued that United breached its duty of care and endangered his safety by making him sit down, *Abdullah* would require that the federal standard of care under the FAA would control. But Mr. Press, unlike the plaintiff in *Abdullah*, does not assert a negligence claim. Rather, he asserts intentional torts whose elements do not include the existence of a standard of care. Mr. Press's complaint alleges actions taken by the flight crew that go *beyond* FAA safety regulations–e.g., making defamatory comments, intentionally trying to humiliate him, and conspiring to have him arrested.

The FAA does not establish uniform standards for intentional torts such as defamation or intentional infliction of emotional distress, and there is no indication that Congress intended as much. Thus, local law should govern the elements of intentional torts, just as local law is applicable to the other elements of a negligence claims (such as causation and breach) that are not regulated by the FAA. The cases cited by United that dismiss claims as preempted under the FAA are distinguishable because they do not involve intentional tort claims. Further, the existence of an FAA action against Mr. Press does not establish that FAA preemption applies because unlike Mr. Press's complaint, the FAA's claims are based directly on safety standards regarding seatbelts and compliance with flight crew. Because Mr. Press's claims are not preempted, United's motion to dismiss on these grounds will be denied.

**2. Choice of Law**

As Mr. Press's intentional tort claims are governed by local law, it must be determined which state law applies. United argues that New York law is proper, while Mr. Press suggests that Pennsylvania law should be applied to his intentional infliction of

9

emotional distress, breach of contract, and defamation claims.[2] A federal court hearing state law claims based on supplemental jurisdiction must apply the choice of law rules of the forum state. *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1136 (3d Cir. 1977). Choice of law analysis is issue specific, so "different states' laws may apply to different issues in a single case." *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). Under Pennsylvania law, the first step of the analysis is to determine whether there is any actual conflict between the two potentially applicable bodies of law, i.e., whether the two states' laws differ. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If there is an actual conflict, the court must then determine whether it is a "false conflict," *id.*, meaning that "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law," *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 188 (3d Cir. 1991). When there is a true conflict, the next step of the choice of law analysis is to examine the "which state has the 'greater interest in the application of its law.'" *Hammersmith*, 480 F.3d at 231 (citing *Cipolla v. Shaposka*, 267 A.2d 854, 566 (Pa. 1970)). Pennsylvania courts make this determination based on two factors: (1) an examination of the contacts to determine the most significant relationship (as advocated in the Restatement (Second) of Conflict of Laws) and (2) an interests analysis of state policies with respect to the controversy. *Melville v. Amer. Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978) (citing *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964)). The contacts analysis is qualitative, not "a mere counting of contacts," *Cipolla v. Shaposka*, 439 Pa. 563, 566 (1970), and depends on the substantive law at issue, *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 463 (3d Cir. 2006).

---

[2] Mr. Press does not dispute that New York law is applicable to his false imprisonment claim, so the choice of law analysis will not be undertaken for that cause of action.

### a. Actual Conflict

There is an actual conflict between the Pennsylvania and New York laws regarding intentional infliction of emotional distress. Pennsylvania law requires a plaintiff to "support the claim of emotional distress with competent medical evidence," *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 281 (E.D. Pa. 2001) (citing *Hackney v. Woodring*, 652 A.2d 291, 292 (Pa. 1994) (per curiam); *Kazatsky v. King David Mem'l Park,* 527 A.2d 988, 995 (Pa. 1987)), while New York law does not, *Plunkett v. NYU Downtown Hosp.*, 801 N.Y.S.2d 354, 355 (N.Y. App. Div. 2005).

There is also an actual conflict between the Pennsylvania and New York laws regarding breach of contract and the duty of good faith and fair dealing. First, New York law requires a plaintiff claiming a breach of contract to show performance on his part, *Clearmont Prop., LLC v. Eisner*, 872 N.Y.S.2d 725, 728 (App. Div. 2009), while Pennsylvania law does not, *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002). Additionally, under Pennsylvania law, "a claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself." *JHE, Inc. v. Se. Pa. Transp. Auth.*, No. 17920 NOV. TERM 2001, 2002 WL 1018941, at *4 (Pa. C.P. Ct. May 17, 2002). New York courts, on the other hand, "recognize a separate cause of action for breaches of the covenant of good faith and fair dealing in cases involving efforts by one part to a contract to subvert the contract itself." *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 271-72 (S.D.N.Y. 2008).

Finally, there is an actual conflict between Pennsylvania and New York laws regarding defamation. Under New York law, a plaintiff must show that the defendant acted with "at least a negligence standard of fault," *Pub. Relations Soc'y of Am., Inc. v. Rd.*

11

*Runner High Speed Online*, 799 N.Y.S.2d 847, 850 (2005); Pennsylvania defamation law does not require any degree of fault unless the defamatory matter was conditionally privileged, *Miketic v. Baron*, 675 A.2d 324, 329 (Pa. Super. Ct. 1996) ("Once a matter is deemed conditionally privileged, the plaintiff must establish that the conditional privilege was abused by the defendant . . . Abuse of a conditional privilege is indicated when [among other things] the publication is actuated by malice or negligence."); *see also* 42 Pa. Cons. Stat. Ann. § 8343.

### b. True Conflict

Because both Pennsylvania and New York would be impaired if the other's law was applied, there is a true conflict. Pennsylvania has an interest in applying its laws here to protect one of its citizens, but New York "has an interest in prescribing the rules governing torts occurring nonfortuitously[3] within its borders." *See LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996). Here, all three torts occurred partly in New York. First, Mr. Press suffered his alleged emotional distress in New York when he was removed from the plane and detained by the Port Authority on the orders of the United flight attendants. Second, his breach of contract claim is based on the alleged emotional distress and false imprisonment occurring in New York. Third, his defamation claim is based on allegedly defamatory statements that were published via e-mail to all passengers of the plane, many of whom presumably read the e-mail within New York, where the plane arrived.[4] Thus, there is a true

---

[3] The occurrence here was nonfortuitous because the host-guest relationship between United Airlines and Mr. Press was intended to terminate in New York. *See Kuchinic v. McCrory*, 222 A.3d 897, 900 (Pa. 1966).

[4] Although it does not appear that either Pennsylvania courts or any courts in the Third Circuit have addressed the issue, other district courts have determined that the place of publication in a case of defamation via e-mail is the location where the e-mail was opened and read. *See Galustian v. Peter*, 561 F. Supp. 2d 559, 565 (E.D. Va. 2008), *vacated on other grounds*, 591 F.3d 724 (4th Cir. 2010); *Hydro Eng'g v. Landa, Inc.*, 231 F. Supp. 2d 1130, 1135 & n.1 (D. Utah 2002).

conflict and there must be an analysis of the relevant contacts and interests in order to determine which law to apply.

### c. Contacts and Interests Assessment

#### i. Intentional Infliction of Emotional Distress

An assessment of the contacts and state interests demonstrates that New York law should be applied to Mr. Press's intentional infliction of emotional distress claim. Turning first to the contacts analysis, the relevant contacts in a tort claim are: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145 (1971). Here, the conduct and injury occurred in New York when Mr. Press allegedly felt emotional distress during his detention by the Port Authority. Mr. Press's domicile is in Pennsylvania, but United does not assert that either New York or Pennsylvania is its place of business or incorporation. The relationship between the parties was centered in part in New York, as that was where Mr. Press's plane was scheduled to arrive. This factor thus favors New York because of its stronger contacts to the injury, occurrence, and relationship between the parties. As for state interests, it has already been noted that Pennsylvania has an interest in protecting its citizens, while New York has an interest in regulating torts occurring in the state. *See LeJeune*, 85 F.3d at 1071. Because both states have an interest, but New York has more significant contacts, New York law must be applied.

#### ii. Breach of Contract

There is insufficient evidence regarding the relevant contacts to assess the appropriate choice of law for the breach of contract claim. The relevant contacts in a breach

13

of contract claim are "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188 (1971). Here, Mr. Press's domicile is in Pennsylvania. United is incorporated in Delaware, though neither party asserts that Delaware law applies. The place of the performance and the location of the subject matter of the contract are at least partially in New York, as that was the plane's scheduled arrival city. But because neither party has made any assertions as to the place of contracting/negotiation or United's place of business, it is premature to conduct a contacts analysis. As to the states' interests factor, there are interests on both sides: Pennsylvania has an interest in its citizens' contracts and New York has an interest in ensuring that contracts for travel to the state are upheld. This factor is thus neutral. Without a proper contacts analysis, however, it is impossible to determine which state's law applies. For this reason, the choice of law issue on the breach of contract claim cannot yet be decided.

**ii. Defamation**

It is also premature to decide the appropriate law to apply to Mr. Press's defamation claim. The relevant contacts for defamation are the same as in Mr. Press's other personal injury claim: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *See* Restatement (Second) of Conflict of Laws § 145 (1971). The complaint and parties' briefs, however, fail to identify several important factors. First, it is unclear where the injury occurred. "The tort of libel is generally held to occur wherever the offending material is circulated." *Keeton v. Hustler Magazine, Inc.*, 465 U.S.

770, 777 (1984) (citing Restatement (Second) of Torts § 577A cmt. a (1997)). But as noted above, the parties have presented no evidence as to where any passenger opened and read the allegedly defamatory e-mail. The parties have additionally failed to allege where the conduct causing the injury occurred, i.e., from where the e-mail was sent. And again, there is nothing on the record indicating United's place of business. Thus, even though Mr. Press's domicile is Pennsylvania, and the parties' relationship was centered in part in New York, there is insufficient information to analyze the contacts. Moving to the second factor of the states' competing interests, Pennsylvania appears to have a greater interest. Many courts applying Pennsylvania law have stated that the state of a plaintiff's domicile is the forum with the greatest interest in that plaintiff's defamation claim. *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 471 (2010) (citing cases). However, many of those decisions were based upon reputational damage that occurred in that state, *see, e.g.*, *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1077 (3d Cir. 1985); *cf.* Restatement (Second) of Conflict of Laws § 150(2) (1971) ("When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, *if the matter complained of was published in that state*.") (emphasis added). Here, it is unclear whether any of the publication and ensuing reputational harm occurred in Pennsylvania or to what extent it occurred in New York, making it difficult to effectively conduct an interests analysis. Because there is insufficient evidence at this time to determine the appropriate choice of law, this issue cannot yet be decided.

### d. Conclusion

New York law will be applied to Mr. Press's claims for false imprisonment and intentional infliction of emotional distress. The appropriate choice of law for Mr. Press's

remaining breach of contract and defamation claims cannot be determined until the parties present further evidence.

### 3. Sufficiency of Claims

#### a. False Imprisonment

United's motion to dismiss Mr. Press's false imprisonment claim for failure to state a claim will be granted. Under New York state law, to prevail on a claim of false imprisonment, a plaintiff must show that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975). A civilian making a complaint to the authorities will not be liable, however, for "merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made." *Krzyzak v. Schaefer*, 860 N.Y.S.2d 252, 253 (App. Div. 2008) (quoting *Du Chateau v. Metro-North Commuter R.R. Co.*, 688 N.Y.S.2d 12, 15 (App. Div. 1999)). Rather, to be liable for false arrest, a civilian complainant must "affirmatively induce[] the police officer to act," such as by actively participating in the arrest or arraignment proceeding, *Cobb v. Willis*, 617 N.Y.S.2d 601, 602 (App. Div. 1994), or "knowingly furnish[ing] false information to police," *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 313 (S.D.N.Y. 2005) (citing *Orndorff v. De Nooyer Chevrolet, Inc.*, 503 N.Y.S.2d 444 (App. Div. 1986)).

Mr. Press has failed to make any allegations that United actively participated in the arrest or deceived the Port Authority when it called to report Mr. Press's behavior. Mr. Press points to Ms. Algano's statement that "if he did not leave his seat and dispose of the trash, she would see to it that he was declared a security threat and that he would be taken off the

plane by police" as proof of inducement. But this statement is merely a threat to report to the authorities and a prediction of the authority's response to the report. It does not actually demonstrate that United provided false information to the police or that the Port Authority did not exercise their own judgment as to whether to detain Mr. Press. Because there is no civil liability for civilian complainants reporting to the police, Mr. Press has failed to state a claim for false arrest. His claim will be dismissed.

### b. Intentional Infliction of Emotional Distress

United's motion to dismiss Mr. Press's claim for intentional infliction of emotional distress for failure to state a claim will also be granted. To state a claim for intentional infliction of emotional distress in New York, a plaintiff must allege four elements: (1) "extreme and outrageous conduct"; (2) "intent to cause or disregard of a substantial probability of causing severe emotional distress"; (3) "a causal connection between the conduct and injury"; and (4) "severe emotional distress." *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993). To satisfy the first element, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983)). Whether conduct is outrageous is, in the first instance, a legal question for the court. *Cavallaro v. Pozzi*, 814 N.Y.S.2d 462, 465 (App. Div. 2006).

Accepting as true Mr. Press's claims that the United flight attendants conspired to have the captain declare a security alert and to have the Port Authority detain him, he has not met the standard for extreme and outrageous conduct under New York law. Courts applying New York law have frequently held that reporting a plaintiff to the police–even with malicious intent or by deceptive means–is not extreme and outrageous conduct. *See, e.g.*,

*Higazy v. Millenium Hotel & Resorts*, 346 F. Supp. 2d 430, 436, 456-58 (S.D.N.Y. 2004), *reversed in part on other grounds*, *Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007) (holding conduct not outrageous where hotel security officer lied to police in order to ensure plaintiff detained for terrorism, resulting in his ten-day detention); *Hill v. City of N.Y.*, No. 05 Civ. 9473 RMB JCF, 2006 WL 2347739, at *6-7 (S.D.N.Y. Aug. 14, 2006) (holding conduct not outrageous where fellow employees falsely reported plaintiff for larceny, resulting in her arrest); *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 310-11 (S.D.N.Y. 2005) (holding conduct not outrageous where clerk falsely accused plaintiff of fraud, resulting in her detention); *Brown v. Sears Roebuck & Co.*, 746 N.Y.S.2d 141, 148 (App. Div. 2002) (holding conduct not outrageous where employer gave false information to police). Because United's alleged actions were not extreme and outrageous as a matter of law, Mr. Press's claim for intentional infliction of emotional distress will be dismissed.

### c. Breach of Contract

United's motion to dismiss Mr. Press's breach of contract claim for failure to state a claim will be denied. United first states that Mr. Press failed to allege performance on his part, an element of a breach of contract claim under New York law. *See Clearmont Prop., LLC v. Eisner*, 872 N.Y.S.2d 725, 728 (App. Div. 2009). Assuming *arguendo* that New York law applies to the claim, United's argument still fails. The complaint alleges that Mr. Press purchased his ticket, and this constitutes a performance under the contract. *Cf. Brualdi v. IBERIA*, 913 N.Y.S.2d 753, 755 (App. Div. 2010) (finding no performance where plaintiff failed to pay for his plane tickets). United also argues that Mr. Press failed to allege damages, which is a required element of the claim under either New York or Pennsylvania law. *See Clearmont Prop.*, 872 N.Y.S.2d at 728; *J.F. Walker Co.*, 792 A.2d at 1272. But reviewing the complaint in the light most favorable to Mr. Press, he alleges emotional

damages such as humiliation arising out of a malicious breach of the duty of good faith and fair dealing. A plaintiff may obtain emotional damages in a contract under New York or Pennsylvania law where there is willful breach. *See Johnson v. Jamaica Hosp.*, N.Y.2d 523, 528 (1984); *Gefter v. Rosenthal*, 119 A.2d 250, 252 (Pa. 1956). Therefore, Mr. Press's breach of contract claims cannot be dismissed on these grounds.

### d. Defamation

Finally, United's motion to dismiss Mr. Press's defamation claim for failure to state a claim will be denied. United argues that Mr. Press failed to allege that any third person understood the alleged defamatory statements as referring to Mr. Press, which is required under both Pennsylvania and New York law. *See* 42 Pa. Const. Stat. Ann. § 8343(a)(5); *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). But reviewing the complaint in the light most favorable to Mr. Press, the allegations are capable "of supporting a jury's finding that the allegedly libelous statements refer to plaintiff," *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010). The complaint states that the allegedly defamatory e-mail referred to "an unruly customer," which a passenger would reasonably identify as Mr. Press because he was the only customer escorted off the plane by the authorities. Further, the complaint alleges that the flight attendants made oral statements while in the air that specifically identified Mr. Press as a "security threat." Thus, the complaint alleges that the defamatory statements were identifiable to others as concerning Mr. Press, and the defamation claim cannot be dismissed for this reason.

## C. Subject Matter Jurisdiction

Mr. Press must file an amended complaint with a proper statement of subject matter jurisdiction. Federal district courts may have jurisdiction over a civil action because the claims "aris[e] under the Constitution, laws, or treaties of the United States," 28 U.S.C.

§ 1331, or because the parties have diverse citizenship, *id.* § 1332. For the purposes of determining diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." *Id.* § 1332(c)(1). Because Mr. Press's claims under 42 U.S.C. § 1983 will be dismissed, the court does not have federal question jurisdiction under § 1331. The court may still have diversity jurisdiction over the case under § 1332, but Mr. Press's complaint does not completely allege United's citizenship: it lists only United's state of incorporation and not the state of its primary place of business. Thus, to establish that the Court has subject matter jurisdiction over this matter, Mr. Press must amend his complaint.

### IV. Conclusion

For the reasons stated above, United Airlines' motion to dismiss will be granted in part and denied in part. Mr. Press must amend his complaint to establish subject matter jurisdiction. An appropriate order follows.

| | |
|---|---|
| May 3, 2012 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |